E. V. WEBB AND DIBRELL BROTHERS, INC., TRADING AS E. V. WEBB & COMPANY v. A. FRIEDBERG AND MAX FRIEDBERG, PARTNERS, TRADING AS A. FRIEDBERG & BRO., AND F. W. BROWN, COMMISSIONER OF COURT, AND MARYLAND CASUALTY COMPANY, INTERVENER.

(Filed 18 February, 1925.)

### 1. Warehousemen—Receipts—Negotiable Instruments—Statutes.

Whether an individual, partnership or corporation, the warehouse receipts issued for tobacco by a storage warehouse company for profit, formed under our statute, are made negotiable when properly endorsed by the one storing tobacco therein, and passes the title to the transferee, (C. S., secs. 4041, 4042, 4044, 4045, 4046), and it is immaterial whether those operating the warehouse use the same for the storage of their own tobacco with that of others.

**2. Same—Attachment.**

Where the owner of tobacco stores the same in a warehouse organized under the provisions of our statute, receives a warehouse receipt therefor in conformity with the law, C. S., 4045, 4046, the goods represented by the receipts are not subject to attachment, C. S., 4065, and a specific remedy for creditors of the owner is given against the holders of these receipts, C. S., 4066, and attachment will not lie against the tobacco stored by a creditor of the owner that will impair the rights of one who is a holder of the receipts thus issued.

**3. Same—Judgments of Other States — Records — Evidence—Constitutional Law.**

Where tobacco was stored in a warehouse here existing under the laws of this State, and in conformity with our statute a negotiable receipt had been issued the owner thereof, and the funds of such owner had been attached in New York in the courts of that State, and a surety or replevin bond given to await the determination of that suit, and that Court upon sufficient evidence had adjudged that the surety is liable and that the owner endorse the receipts to the surety company upon the payment of the money, which the surety company accordingly has paid: *Held*, the duly authenticated record in this Court according to our statutes (C. S., Vol. 2., appendix III) and under the Federal Statutes (U. S. Rev. Stat., 905 *et seq.*), is properly received in our courts as evidence, and given effect under Article IV, section 1, Constitution of the United States.

APPEAL by both plaintiffs and defendants from *Horton, J.,* and a jury, at February Term, 1924, of LENOIR.

Attachment suits were issued by plaintiffs against defendants. This attachment suit was matured by the plaintiffs against the defendants, and a judgment rendered in favor of the plaintiffs. In addition and after rendition of this judgment the Maryland Casualty Company was allowed to intervene, and the trial came on for the purpose of disposing of the claims of the intervener. The court held in the outset that the burden was upon the intervener, to which no exception was taken.

The following issues were submitted to the jury and their answers thereto:

"1. Is the intervener, the Maryland Casualty Company, the owner of the tobacco in controversy by virtue of the transfer of the tobacco warehouse receipts? Answer: 'Yes.'

"2. Is the intervener entitled to lien prior to that of E. V. Webb & Company by virtue of the transfer of E. B. Ficklen Tobacco Company attachment judgment rendered in Pitt County Superior Court? Answer: 'Yes.'

"3. What assets has the intervener received as security in addition to the transfers sued on herein? Answer: '$20,000.'

"4. Is the intervener entitled to be subrogated to the rights of E. B. Ficklen as against the plaintiffs? Answer: 'Yes.'"

Both the intervener and plaintiffs introduced evidence to sustain their respective contentions.

Numerous exceptions of plaintiffs and intervener, Maryland Casualty Company, and assignments of error appear in the record. From the judgment plaintiffs and intervener both appealed to the Supreme Court. Further facts material will be stated in the opinion.

*John G. Dawson and Varser, McLean & Stacy for plaintiffs.*
*Rouse & Rouse for Maryland Casualty Co., intervener.*

CLARKSON, J. In the present case the plaintiffs and the intervener, Maryland Casualty Co., both appeal. We will consider the cases together. Although the record is voluminous, there are only a few material facts. There is no serious dispute about the facts on the first, second and fourth issues. From the entire record they will be treated as admitted. The law, for our decision, arising on the evidence, we will consider as it appears to us presented on the entire record.

The facts succinctly are: E. B. Ficklen Tobacco Co., Inc., sued defendants, who are nonresidents of North Carolina, and attached certain tobacco, the actual tobacco 104 hogsheads of leaf tobacco, in certain warehouses in North Carolina, in Ficklen Warehouse, Dodson Warehouse and Kinston Storage Warehouse, and also in New York attached certain cash money and claims against various insurance companies. Both suits are based on the same claim. The plaintiffs made a subsequent attachment to the Ficklen attachment and attached the same actual tobacco in the warehouses in North Carolina, but not the warehouse receipts. E. B. Ficklen Tobacco Co., Inc., obtained judgment in New York against defendants for its debt and also judgment in the attachment case in North Carolina. The intervener, the Maryland Casualty Company, became surety for the defendants in the Ficklen attachment in New York. The warehouse receipts for the tobacco were not attached when the attachments were sued out in North Carolina. The defendants delivered the warehouse receipts to E. B. Ficklen Tobacco Co., Inc., in the early part of June, 1920. E. B. Ficklen Tobacco Co., Inc., sued the intervener, Maryland Casualty Co., in New York, and the New York Court in its judgment compelled E. B. Ficklen Tobacco Co., Inc., under its protest, to assign the warehouse receipts and the North Carolina judgment and attachment to the Maryland Casualty Co., before it was required to pay the amount of the surety bond—$25,000. This judgment of the Court in New York was after plaintiffs' attachments. The Maryland Casualty Company then became interveners in the present case, after plaintiffs had obtained judgment against the defendants, but before the proceeds of the tobacco was applied. It was admitted that

the actual tobacco attached in North Carolina in the suits was sold and the proceeds amounted to $9,470.81 and were in the hands of the commissioner of the court, who is a party to this action.

It was in evidence that the warehouses in which the actual tobacco was attached in North Carolina, were operated by E. B. Ficklen Tobacco Co., Inc., Kinston Storage Warehouse Co., and C. R. Dodson Storage Co., and the customary warehouse receipts were given (C. S., 4042) for the tobacco in the warehouses. It was in evidence that these warehouses were used for the storage of the tobacco in which the concerns has an interest and is used for the storage of tobacco either for the concerns or the customers. The receipts are similar to the Ficklen one, which is as follows:

"The following warehouse receipts issued by E. B. Ficklen Tobacco Company, Inc., Storage House at Greenville, N. C.

26 Hogsheads 05 Nos. 1 to 26 inclusive, lbs. 27,827........$5,565.40
26 Hogsheads 02 Nos. 38 to 63, inclusive, lbs. 28,125 ...... $7,734.38"

and each receipt contains the following printed matter:

"The within described hogshead of tobacco is stored at the warehouse of the E. B. Ficklen Tobacco Co., Inc., Storage House by A. Friedberg & Bro., and will be delivered to the holder of this note on demand and payment of charges. No claim for damages on storage allowed, unless made before delivery. The storage rates are $1.50 for first six months or less, fifteen cents per month thereafter, 25c. outage. The E. B. Ficklen Tobacco Co., Inc., Storage Warehouse, is not responsible for loss or damage by fire."

C. S., ch. 79, entitled "Warehouse Receipts," sec. 4037, defines "Warehouseman" as meaning *"a person lawfully engaged in the* business of storing goods for profit," and "person" includes a corporation or partnership of two or more persons having a "joint or common interest." Sec. 4041. "Warehouse receipts may be issued by any warehouseman." Sec. 4042. What receipt must contain. Sec. 4044 defines nonnegotiable receipts. Sec. 4045 provides how nonnegotiable receipts marked. Sec. 4046 defines negotiable receipts. Sec. 4065 makes goods not subject to attachment or execution when negotiable receipt is issued. Sec. 4066 gives creditors remedy against receipt.

In the case of *E. B. Ficklen Tobacco Co., Inc., v. Friedberg & Bro.,* in the Supreme Court of New York, *Mr. Justice McAvoy,* on 9 February, 1922, rendered the opinion on this warehouse receipt matter as follows: "That the levy made by the sheriff of Lenoir County under the order

of attachment issued by the Superior Court, Lenoir County, State of North Carolina, wherein E. V. Webb & Co., were plaintiffs and A. Friedberg and Max Friedberg copartners, trading as A. Friedberg & Bro., were defendants, was of no legal effect and insufficient to attach the tobacco mentioned and described by the negotiable warehouse receipts hereinafter mentioned by reason of the fact that the said receipts are negotiable receipts and the merchandise described therein cannot be attached or levied upon unless the receipts themselves are attached and levied upon by the sheriff or the said receipts impounded by the court or their negotiation enjoined."

We think that the concerns are warehousemen under all the facts in this case. It matters not if it is a person or partnership. If the concern is engaged in the business and goods are stored for profit, the statute applies. It matters not if the concern stores its own and also the goods of others. The receipt issued terms itself "Warehouse receipt" and shows on the face that the goods are stored for profit; it gives the "storage rates." The receipts and admitted evidence shows that the concerns are warehousemen and the concerns dealt with the public as such.

The burden was admitted in the cause to be on the intervener. We think the New York judgment was properly exemplified and evidence in the cause. C. S., Vol. 2, appendix III, Authentication of Records (U. S. Rev. Stat., 905, 906, 907). It showed that the "warehouse receipts" covered the tobacco in controversy, and they were owned by the Maryland Casualty Co. transferred by E. B. Ficklen Tobacco Co., Inc., and also the E. B. Ficklen Tobacco Co., Inc., attachment in North Carolina, and were held by the Maryland Casualty Company to reimburse it for amount due it of $25,000 ordered to be paid to E. B. Ficklen Tobacco Co., Inc., on its judgments when the warehouse receipts and attachments were transferred. The attached tobacco in North Carolina amounted to $9,470.81, which was in the hands of the commissioner of the court, who is a party to this action. The court below properly instructed the jury to answer the first, second and fourth issues "Yes." The competent evidence and admission in the answers fully warranted this instruction. The main question of fact was on the third issue—"What assets had the intervener received as security in addition to the transfers sued on herein?" The evidence on this issue was conflicting. Without repeating it, we think the evidence bearing on the issue competent and sufficient to sustain the verdict and the issue proper and material from the facts in this case. The jury answered $20,000. On this verdict, the court in its judgment "Ordered, adjudged and decreed that of the fund held by the commissioners in this action from the sale of said tobacco, the said commissioners pay unto the intervener the sum of $5,000 with

interest thereon at the rate of six per cent per annum, from 5 May, 1921, that being the amount so paid by the intervener to the E. B. Ficklen Tobacco Co., Inc., less the amount of $20,000 paid to the intervener by the defendants Friedberg. It is further ordered, adjudged and decreed that the balance of the sum on hand by the commissioners in this action, with accrued interest thereon, be paid unto the plaintiffs herein, and that the costs be paid by plaintiffs as such costs have accrued herein in the trial upon the interplea."

The Maryland Casualty Company, intervener, claimed the entire proceeds of the tobacco sold under the attachments of plaintiffs and in the hands of the commissioner, amounting to $9,470.81, to be applied on the E. B. Ficklen Tobacco Co., Inc., judgment obtained against it in the New York Court for $25,000. As security it had the warehouse receipts on the tobacco in controversy turned over to it under court order by said Ficklen Co., Inc. The jury found it had $20,000 additional assets and the court below, under the findings of the jury, gave intervener $5,000 and interest to be taken out of the fund of $9,470.81 the commissioner had and the balance paid to plaintiffs, thus paying in full intervener's claim of $25,000.

It appears that in New York a summary judgment against the surety cannot be taken in the same action, as is provided in North Carolina. C. S., 3961-2-3.

We have here a judgment of another state, *E. B. Ficklen Tobacco Co., Inc., v. Maryland Casualty Co.,* the intervener in this case, in the Supreme Court of New York County, duly exemplified. This judgment is set forth fully in the record. It gives the findings of fact and conclusions of law and judgment of *John V. McAvoy,* Justice of Supreme Court. This judgment transfers and assigns the warehouse receipts and attachments in North Carolina to the intervener, Maryland Casualty Co., and says that "the said defendant (Maryland Casualty Co.), when receiving said negotiable warehouse receipts shall be and is a bona fide holder of said negotiable warehouse receipts in due course," etc. Under the judgment E. B. Ficklen Tobacco Co., Inc., turned over to the Maryland Casualty Co. the warehouse receipts and assigned the North Carolina attachments and the Maryland Casualty Co. paid E. B. Ficklen Tobacco Co., Inc., $25,000 and intervened in this case.

Article IV, sec. 1, Const. of U. S., is as follows: "Full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other state. And the Congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof." *Hanley v. Donoghue,*

116 U. S., 1; *Thompson v. Whitman,* 18 Wall., 457; *Andrews v. Andrews,* 188 U. S., 14; *Haddock v. Haddock,* 201 U. S., 562; Const. of U. S., Anno., 1923, p. 478 *et seq.*

"By virtue of Const., U. S., and Acts of Congress in pursuance thereof, judgments of other states are put upon the same footing as domestic judgments, they are conclusive of all questions involved in them, except fraud in their procurement, and whether the parties were properly brought before the court." *Marsh v. R. R.,* 151 N. C., 160; *Miller v. Leach,* 95 N. C., 229.

The "warehouse receipts" were under our statute made negotiable. C. S., 4077 *et seq.* The judgment of the New York Court put the title to these negotiable warehouse receipts in the intervener, Maryland Casualty Co., ordered the warehouse receipts turned over by E. B. Ficklen Co., Inc., and the Maryland Casualty Co. to pay the $25,000 judgment. The judgment also transferred Ficklen's North Carolina attachments. This was all done by the litigants.

The plaintiff in its further answer to intervener's complaint, admit this, but claim that the E. B. Ficklen Tobacco Co., Inc., was forced in the action to transfer and assign the warehouse receipts and attachments in North Carolina to Maryland Casualty Co., but it is admitted on the record that E. B. Ficklen Tobacco Co., Inc., did make the transfer and received the $25,000. From the admission of record title was in the intervener. This fact being established, the law is clear.

C. S., 4081 is as follows:

"A person to whom a negotiable receipt has been duly negotiated acquires thereby—

"1. Such title to the goods as the person negotiating the receipt to him had or had ability to convey to a purchaser in good faith for value, and also such title to the goods as the depositor or person to whose order the goods were to be delivered by the terms of the receipt had or had ability to convey to a purchaser in good faith for value; and

"2. The direct obligation of the warehouseman to hold possession of the goods for him according to the terms of the receipt as fully as if the warehouseman had contracted directly with him."

We have given a most careful study of the entire record and able briefs of the parties. We think that substantial justice has been done from the facts in this cause and that there is in the record no prejudicial or reversible error in either the appeal of plaintiffs or intervener.

In the judgment of the court below, there is

No error.