ANNA M. SECHLER

*v.*

ROY W. SECHLER.

[Decided. October 13th, 1922.]

1. A decree of divorce in a foreign state procured by the husband who had gone to such foreign state to obtain the divorce for a cause which occurred while the parties resided in New Jersey, and was not a ground for absolute divorce under the New Jersey laws, is void.

2. Where a husband without justifiable cause abandoned his wife, went to a foreign state and procured a divorce which was void in New Jersey, and thereafter refused and neglected to maintain and provide for her, the wife could sue for maintenance.

---

On final hearing on bill for maintenance.

*Mr. James M. Davis,* for the complainant.

*Mr. Clarence L. Cole* (by *Mr. Clarence L. Cole, Jr.*), for the defendant.

LEAMING, V. C.

The single inquiry here presented is whether a certain decree of divorce entered in the State of Nevada in favor of defendant herein is operative as a bar to this suit of complainant for support. The bill seeks a decree compelling defendant to support her and her child and also adjudging the Nevada decree of divorce of no force or effect in this state.

The parties were lawfully married and Atlantic City was the domicile of both until March 30th, 1919, when defendant left Atlantic City for Reno, Nevada, arriving there April 4th, 1919. Since that time complainant has continued to reside in Atlantic City and defendant has remained in Reno under a claim of domicile there. Six months and four days after defendant's arrival in Reno he filed a bill for divorce against complainant, and in the following December procured a decree of divorce from the bonds of matrimony on the ground of extreme cruelty. In that suit complainant herein was served in New Jersey by substituted process, but did not appear.

In this suit defendant has appeared and defended.

The concluding part of section 33 of our Divorce act is as follows:

"*Provided*, That if any inhabitant of this state shall go into another state, territory or country, in order to obtain a decree of divorce for a cause which occurred while the parties resided in this state, or for a cause which is not ground for divorce under the laws of this state, a decree so obtained shall be of no force or effect in this state."

The evidence in this case renders it impossible to escape the conclusion that defendant herein went to Reno in order to obtain a decree of divorce for a cause which occurred while the parties resided in this state, and also for a cause which is not ground for a divorce from the bonds of matrimony under the laws of this state.

In support of his defence defendant herein has testified in a general way that he went west because he heard there were better business prospects in the west for a music teacher. He does not disclose how he heard or from whom or that Reno

was specifically brought to his attention in that respect. While he denies that he went to Reno for a divorce, his testimony as to that is in part as follows:

"*Q.* Why did you come to Reno and Nevada April 4th, 1919?

"*A.* Well, my practice had been ruined in the east and I heard there was more of an opening in the west, so I started west and of course I thought while I was out here that I might apply for a divorce.

"*Q.* In other words, that was not the sole reason why you came here?

"*A.* No.

"*Q.* What was the other reason?

"*A.* I came to try to build up a practice because I heard the openings were greater here."

Complainant and a witness on her behalf testified to three several occasions before defendant left Atlantic City for Reno on which defendant had said that he intended to go to Reno and get a divorce and get rid of complainant.

The Reno attorney who procured the divorce for defendant testified touching the divorce laws of Nevada and stated that he had known defendant since April, 1919. From that it appears at least probable that defendant on his arrival at Reno promptly consulted his attorney touching a divorce.

In view of these circumstances, it seems impossible to escape the conclusion that defendant went to Reno in order to obtain a decree of divorce, just as he said he intended to do. As already stated, the divorce which was procured by defendant was for a cause which occurred while the parties resided in this state, and also was for a cause which is not ground for a divorce from the bonds of matrimony under the laws of this state. The case thus comes within the very terms of the statute above quoted, and by the terms of that statute the Nevada decree is of no force or effect in this state.

The sufficiency of the legislation above referred to cannot be said to be an open question in this court. *Jung* v. *Jung, 85 N. J. Eq. 372; Lister* v. *Lister, 86 N. J. Eq. 30; Thompson* v. *Thompson, 89 N. J. Eq. 70; Pitel* v. *Pitel, 90 N. J. Eq. 286; Hollingshead* v. *Hollingshead, 91 N. J. Eq. 261.*

This view renders it unnecessary to here pass upon the *bona fides* of defendant's residence in Nevada prior to his suit for divorce in that state. It is clear that he went to Reno to obtain a divorce; whether like so many others he became wholly captivated by the beauties of that city at sight becomes immaterial under our statute.           •

The evidence herein further discloses that defendant, without any justifiable cause, abandoned complainant and separated himself from her and has since refused and neglected to maintain and provide for her. Since his abandonment of complainant defendant has supplied $25 per month for his child, now five years of age, and nothing for complainant. Defendant's income at this time, according to his testimony, averages about $200 to $225 per month. The child of the marriage is with complainant. A decree will be advised requiring defendant to pay to complainant for her support and the support of the child of the marriage $100 per month and costs herein.