In the Matter of the Estate of
ALLEN H. AINSCOW, *deceased.*

*New Castle, Sept. 29, 1943.*

SPEAKMAN, J., sitting.

*Walter J. Willis,* for petitioner Frank Ainscow.

*Joseph A. L. Errigo,* for respondent Harry Maculley.

*Ivan Culbertson,* for respondent Maynard S. Alexander.

SPEAKMAN, Judge:

This is a proceeding under the provisions of *Chapter* 143, *Volume* 42, *Laws of Delaware*. The application of Frank Ainscow was by petition. After notice, as required by the statute, had been given to all other interested parties, Maynard S. Alexander, as administrator of the estates of Allen H. Ainscow, deceased, and Jennie M. Ainscow deceased, appeared and filed an answer to the petition. To this answer a reply was filed by the applicant. No answer to the petition was filed by any of the other respondents. At the hearing the applicant and the respondents, Maynard S. Alexander, as administrator of the estates of both decedents, and Harry Maculley, were represented by counsel. None of the other respondents appeared either in person or by counsel.

The statute (*Chapter* 143, *Volume* 42) provides that

"At the hearing of said application or any adjournment thereof, the court shall consider the sworn petition of the applicant and any sworn answer or answers that shall have been filed in the proceeding and shall take and receive any and all pertinent evidence that may be offered by the petitioner or by the personal representative of the decedent or by any person appearing and claiming to have an interest in the estate to be distributed."

Under the language of the statute, it is the duty of the

court to consider the rights of all interested parties, as if they are claimants, therefore no burden is imposed and no presumptions arise by reason of an interested party occupying either the position of petitioner or of respondent. The decree entered must rest upon the strength of the rights of the respective parties to the proceedings, as disclosed by the evidence, irrespective of the position which they occupy.

Witnesses called on behalf of the petitioner and the respondent Harry Maculley testified in effect that Jennie M. Ainscow and her first husband, Mayrice F. Alexander, lived in Delaware, a number of years prior to their marriage in the year 1901. The residence of Mrs. Ainscow immediately before her first marriage was at Lewes, Delaware. Following that marriage, they lived and cohabited as man and wife in the City of Wilmington, in this State, until about 1934 or 1935, when they separated, and the wife went to New York State, where she had an apartment. She took her furniture with her and stayed there at least one year. Upon leaving the State of New York she returned to Wilmington, and from there she went to Lewes. She had become a member of St. Paul's Church in Wilmington in 1916, and on April 29, 1937, she transferred her membership to the Methodist Episcopal Church in Lewes. When she left for Reno in 1937, she went from Lewes. It was conceded by the administrator that Jennie M. Alexander was never divorced from her husband, Mayrice F. Alexander, by any court within the State of Delaware.

From the testimony of Maynard S. Alexander, the administrator and a son of Mayrice F. Alexander and Jennie M. Alexander, it appeared that his father and mother had separated early in January, 1935, and at that time his mother moved with her furniture into an apartment which she had already rented, in Mount Vernon, New York; that early in June, 1937, Allen H. Ainscow asked the witness for and received his consent to marry the then Jennie M. Alexander, the mother of the witness. Later Ainscow told Alex-

ander that he had urged his (Alexander's) mother to take up residence in Reno, Nevada, and that she had consented to do so, and he then handed the witness $500 in cash to be used for his mother's railroad fare and her expenses while she was in Reno. The money was used for such purposes, his mother went to Reno, obtained a divorce from her husband, and returned to Delaware. Upon her return she married Ainscow. The witness identified a check dated July 16, 1937, drawn by Allen H. Ainscow to the order of Jennie M. Alexander, in the amount of $150, which was endorsed by Jennie M. Alexander and F. Raffeto, and deposited in a Reno bank. The check was admitted in evidence and the witness testified that the proceeds of the check went to pay Mr. Raffeto, who was Mrs. Alexander's attorney, for services and expenses.

From the documentary evidence it appeared that the divorce decree of the Nevada court was signed on August 9, 1937. On August 13, 1937, Allen H. Ainscow and Jennie M. Alexander made a written application to the Clerk of the Peace in Wilmington for a marriage license, which was signed by both of the applicants. In the application the residence of Jennie M. Alexander was given as Lewes, Delaware. From the original return of marriage between Allen H. Ainscow and Jennie M. Alexander, it appeared that the ceremony was performed on August 14, 1937, at Lewes, Delaware.

The complaint filed in the divorce proceedings in Nevada was verified and contained the following averment:

"That the plaintiff is a resident of the State of Nevada and now resides, and during all of the time for six weeks last, past, and immediately preceding the filing of this complaint, continuously has resided in and been an actual and bona fide resident of and domiciled in the State of Nevada, and during all of said time was, and now is, physically and corporeally present, within the State aforesaid."

The complaint alleged as the ground for divorce "extreme cruelty."

The decree for divorce is, in part, as follows:

"And it appearing to the satisfaction of the Court from the evidence and the findings of fact and conclusions of law that the plaintiff was at the time of the commencement of this suit, and for more than six weeks prior thereto, continuously has been and still and now is an actual and bona fide resident of and domiciled within the County of Washoe, State of Nevada, and that the defendant has duly appeared herein; and it further appearing to the satisfaction of the Court that all the allegations of the complaint are true and are sustained by the evidence and the findings of fact, and that as conclusions of law the plaintiff is entitled to the relief herein given;"

It was stipulated by counsel for the petitioner Frank Ainscow, and Maynard S. Alexander, as administrator, that the pertinent provisions of the Nevada statute provide that:

"Divorce from the bonds of matrimony may be obtained by complaint, under oath, to the district court of any county in which the cause therefor shall have occurred, or in which the defendant shall reside or be found, or in which the plaintiff shall reside, or in which the parties last cohabited, or if plaintiff shall have resided six weeks in the state before suit be brought, for the following causes, or any other causes provided by law:* * *

"Sixth—Extreme cruelty in either party.

"* * * no court shall have jurisdiction to grant a divorce unless either the plaintiff or defendant shall have been resident of the state for a period of not less than six weeks preceding the commencement of the action. * * * The judgment or decree of divorce granted under the provisions of this act shall be final." *Comp. Laws, Nev.,* § 9460, *subds.* 6, 8.

All parties to the proceeding now pending are entitled to any benefit to be derived from this stipulation, but of course, no one who is not a party to the stipulation can be prejudiced by reason of it.

The respondent, Maynard S. Alexander, as administrator of both estates claims that the decree of the Nevada court "is attended with all the presumptions of validity and bona fides that are inherent in the judgment of any court of a sister State, and unless impeached for fraud, is binding everywhere," and he cites in support thereof *Williams v.*

*North Carolina,* 317 *U.S.* 287, 63 *S. Ct.* 207, 210, 143 *A. L. R.* 1273. In the *Williams* case North Carolina did not seek to sustain the judgment below on the ground that the petitioners were not domiciled in Nevada. It admitted that there was probably enough in the record to require that the petitioners be considered "to have been actually domiciled in Nevada." The court in the *Williams* case did not overrule *Andrews v. Andrews,* 188 *U.S.* 14, 23 *S. Ct.* 237, 239, 47 *L. Ed.* 366.

In the *Andrews* case it was held that a state is not obliged to enforce a decree of divorce obtained in another State wherein neither of the parties had a *bona fide* domicile, and that in the absence of such a domicile the appearance of the defendant (as was the case in the proceeding here) was insufficient to confer jurisdiction on the court where the decree was granted. The court in upholding a Massachusetts statute the pertinent language of which is almost identical with the language contained in 3525 of the *Code of* 1935 of this State, said:

"It is equally clear that the statute prohibits an inhabitant of Massachusetts from going into another state to obtain a divorce, for a cause which occurred in Massachusetts while the parties were domiciled there, or for a cause which would not have authorized a divorce by the law of Massachusetts; and that the statute forbids the courts of Massachusetts from giving effect to a judgment of divorce obtained in violation of these prohibitions. That the statute establishes a rule of public policy is undeniable."

The court held that no violation of the due faith and credit clause of the *Constitution of the United States, Art.* 4, § 1, arose from the action of the Supreme Judicial Court of Massachusetts in obeying the command of the state statute and refusing to give effect to the decree of divorce in question.

Our statute (3525 *Code of* 1935) establishes a rule of public policy for this State. Its pertinent provision is as follows:

"* * * If any inhabitant of this State [that is domiciled here, See Bouvier's Law Dictionary, Rawle's 3rd Ed.] shall go into another state, territory or country in order to obtain a decree of divorce for a cause which occurred while the parties resided in this State, or for a cause which is not ground for divorce under the laws of this State, a decree so obtained shall be of no force or effect in this State."

The alleged ground for divorce in the Nevada proceedings was "extreme cruelty." In this State one of the causes for divorce from the bonds of matrimony is "Extreme cruelty, on the part of either husband or wife, such as to endanger the life or health of the other party or to render cohabitation unsafe." *Section* 3499 (*d*), *Code of* 1935.

It has frequently been said that cruelty as a ground for divorce is conduct endangering the life, limb, or health of the complaining spouse or creating a reasonable apprehension of such injury. 17 *Am. Jur.* 177, citing *Kelly v. Kelly*, 18 *Nev.* 49, 1 *P.* 194, 51 *Am. Rep.* 732, and other cases. If the above definition is correct, the words "extreme cruelty" as used in the Nevada statute and the above quoted phrase in the Delaware statute appear to be synonymous, as claimed by the administrator.

The State of New Jersey has a statute identical in language with our statute (3525, *Code of* 1935), and the State of Maine has one which is very similar. In each of these States, as well as in Massachusetts, the validity of the respective statutes has been recognized. *Sechler v. Sechler*, 94 *N.J. Eq.* 47, 118 *A.* 629; *Henry v. Henry*, 104 *N.J. Eq.* 21, 144 *A.* 18; *Di Brigida v. Di Brigida*, 116 *N.J. Eq.* 208, 172 *A.* 505; *Sprague v. Sprague*, 131 *N.J. Eq.* 104, 23 *A.* 2d 810; *Gregory v. Gregory*, 76 *Me.* 535, affirmed in 78 *Me.* 187, 3 *A.* 280, 57 *Am. Rep.* 792; *Andrews v. Andrews*, 176 *Mass.* 92, 57 *N.E.* 333, affirmed in 188 *U.S.* 14, 23 *S. Ct.* 237, 47 *L. Ed.* 366; *Sewall v. Sewall*, 122 *Mass.* 156, 23 *Am. Rep.* 299.

The administrator, however, contends that our statute (3525, *Code of* 1935) has no application because it has not been shown that Jennie M. Alexander was domiciled in the

State of Delaware, during the pendency of the proceedings in the Nevada court.

It is the law of this State, that a domicile once established remains the legal domicile until a new one is acquired. The essentials of domicile of choice are the fact of physical presence at a dwelling place and the intention to make that place home. There must be a concurrence of fact and intent. The absence of either precludes the change. There must be an actual abandonment of the first domicile coupled with an intention not to return to it, and the acquisition of a new domicile by actual residence in another place with the intention of making that place a permanent home. *New York Trust Co. v. Riley,* 24 Del. Ch. 354, 16 *A.* 2d 772.

Applying this rule of law to the facts in the case, as established by the evidence, it is quite apparent that Jennie M. Alexander was not domiciled in Nevada at any time during the pendency of the divorce proceedings in that State, and during that time it is equally apparent that she was domiciled in Delaware. The only evidence tending to show any residence outside of Delaware which is at all inconsistent with domicile in Delaware for the period commencing prior to her first marriage in 1901, and down to the time of her death in 1942, was that which was introduced to the effect that she moved into an apartment in New York State with her furniture about 1934 or 1935. and remained there about one year, and then returned to Delaware.

The inescapable conclusion from the evidence is that Jennie M. Alexander, while she was domiciled in and an inhabitant of Delaware, went into the State of Nevada in order to obtain a divorce for a cause which occurred while she and her husband, Mayrice F. Alexander, both resided in and were domiciled in the State of Delaware. Under our statute (3525, *Code of* 1935) the decree of the Nevada court is of no force or effect in the State of Delaware. What effect the proceeding in Nevada on the status of the parties

in this State would have been but for our statute, it is not necessary to decide.

The applicant and the respondent, Harry Maculley, contend that the marriage in question is invalid, because of the invalidity of the divorce decree. On the other hand the administrator contends that there is every presumption in favor of the legality of the said marriage, and that the other parties in interest are precluded from asserting the invalidity of the divorce decree for the purpose of showing the invalidity of the said marriage.

Most authorities agree that where an existing marriage is shown, and it is sought, for any reason, to invalidate it, the burden of proof is upon the party attacking the validity of the marriage. This amply appears from the great number of cases collected in the annotations in 39 *A. L. R. at page* 464, and 77 *A. L. R. at page* 729.

The rule as stated in 1 *Bishop on Marriage, Divorce and Separation, Sec.* 956, is that:

"Every intendment of the law leans to matrimony. When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of proof, the law raises a strong presumption of its legality,—not only casting the burden of proof on the party objecting, but requiring him throughout, in every particular, to make plain, against the constant pressure of this presumption, the truth of law and fact that it is illegal and void."

For the purpose of establishing his claim, the administrator has shown, and rests his claim upon, the marriage of his decedent with Allen H. Ainscow. He insists that none of the other parties in interest is entitled to be heard to impeach the decree of divorce of the Nevada court so as to invalidate the marriage.

The *Restatement of the Law of the Conflict of Laws, Sec.* 112, states that "the validity of a divorce decree cannot be questioned in a proceeding concerning any right or other interest arising out of the marital relation either by a spouse who had obtained such decree of divorce from a court

which had no jurisdiction, or by a spouse who takes advantage of such a decree by remarrying," but the learned authors of the *Restatement* refuse to express an opinion whether the children of a prior marriage, or a third person may be precluded from questioning the validity of a divorce decree under the circumstances described in the section.

Comprehensive annotations on the right of one, other than a party to a divorce proceeding, to attack a divorce decree on jurisdictional grounds are contained in the following volumes of *A. L. R.*, 109 *at page* 1028, 120 *at page* 815, 122 *at page* 1328, and 140 *at page* 932. Distinction is drawn between cases (1) where the lack of jurisdiction is predicated upon the constructive service upon the non-resident defendant, and (2) where there is a lack of jurisdiction over the subject matter of the divorce, as where neither party is a resident of the forum.

By far, the greater number of cases included in the annotations were decided by the courts of New York. It would be a difficult task to examine and attempt to reconcile the great number of New York cases for the purpose of determining the New York rule. The annotator in 140 *A. L. R. at page* 923 has reviewed the cases and directs attention to the fact that in *Fischer v. Fischer,* 1930, 254 *N.Y.* 463, 173 *N.E.* 680, set out in annotation in 120 *A. L. R.* 818, and in *Lefferts v. Lefferts,* 1933, 263 *N.Y.* 131, 188 *N.E.* 279, set out in annotation in 120 *A. L. R.* 820, and *Davis v. Davis,* 1938, 279 *N.Y.* 657, 18 *N.E.* 2d 301, the court said that in these cases the Court of Appeals rejected the application of the doctrine of equitable estoppel and permitted the truth concerning the foreign decree of divorce to be uncovered; and that while in *Starbuck v. Starbuck,* 1903, 173 *N.Y.* 503, 66 *N.E.* 193, 93 *Am. St. Rep.* 631, and *Bell v. Little,* 1923, 204 *App. Div.* 235, 197 *N. Y. S.* 674 (affirmed without opinion in 1923, 237 *N.Y.* 519, 143 *N.E.* 726), and in *Brown v. Brown,* 1934, 242 *App. Div.* 33, 272 *N. Y. S.* 877 (affirmed without opinion in 1935, 266 *N.Y.*

532, 195 *N.E.* 186), the Court of Appeals had approved this equitable doctrine, none of the last class of cases involved a matrimonial action and in each of them one party sought to assert a private right which was collateral to a valid contract of marriage; and that because of the private character of these actions, equitable consideration could be recognized without transgressing any limitations imposed by public policy.

The prevailing rule in other jurisdictions is that where a divorce decree is invalid on jurisdictional grounds affirmative relief relating thereto will only be granted on the ground of public policy when the relief is being sought by a second spouse who fraudulently assisted or connived with the plaintiff in such divorce proceedings, or who had knowledge of such fraud at time of his subsequent marriage.

Although neither *Bowen v. Finke,* (*D.C.D.C.*) 34 *F. Supp.* 235, nor *Jardine v. Jardine,* 291 *Ill. App.* 152, 9 *N.E. 2d* 645, 651, was cited by any of the parties, they are here referred to to illustrate the divergence of opinion as to what constitutes public policy. In each case, the proceeding was for annulment of marriage, and the facts leading up to and culminating in a marriage were analogous to the facts in the instant proceeding. In each case the second spouse instigated and financed the divorce proceeding, so as to marry the plaintiff in the proceeding. In the *Bowen* case the court said:

"In these circumstances, I do not believe that public policy requires action by this court at the instance of a party who has confessedly perpetrated a fraud against a court of the State of Maryland, and who now seeks equitable relief from a situation induced by his own wrong."

In the *Jardine* case the court based its decision on the ground that the doctrine of *"pari delicto"* and "unclean hands" was not applicable where the state was an interested party, and held that

"The purported marriage * * * being void *ab initio,* 'the de-

cree of annulment adds nothing * * * but simply operates as an estoppel against setting up the validity of the marriage in any future controversy.' "

The cases last above, as well as many cases relied on in this case, were proceedings for the annulment of a marriage because of the invalidity of a decree of divorce obtained by one of the parties. Many of the cases are of questionable value in connection with the matter for determination, because as was well said in *Heflinger v. Heflinger,* 136 *Va.* 289, 118 *S.E.* 316, 320, 32 *A. L. R.* 1088:

"The decree of annulment only ascertains that there had been no valid marriage between the parties, and obviates the necessity of ever thereafter being compelled to show its invalidity. If the complainant were acquiring any rights by virtue of his suit, other than the determination of his status in society, a different rule might apply; but he is acquiring none."

In the present case Ainscow was an active participant in the fraud which was practiced on the Nevada court. He got what he bargained for, and so far as is shown by the evidence he accepted the situation without complaint. Under these circumstances no opinion is expressed as to what the result might have been if he had sought an annulment of the marriage, or other relief involving public policy, but if he had sought affirmative relief of any other nature from any matter arising out of his marital relation the proceeding would have been one which would have called for the application of the equitable maxim that "He who comes into court must come with clean hands." Subject to the limitation that "the Courts may interfere from motives of public policy," the general rule is that "where parties are in *pari delicto,* no affirmative relief of any kind will be given to one against the other." 3 *Pom. Eq. Jur.* (5 *Ed.*) *Sec's.* 940, 941.

Ainscow, during his lifetime, having been precluded from asserting any right not involving public policy, certain of his next of kin are, after his death, now making claim to his personal estate, and in furtherance of their claim they

assert that Ainscow died intestate without leaving a lawful widow surviving. To accomplish their purpose they claim that the decree of divorce of the Nevada court is of no force and effect in this State. As the decree of divorce was not subject to collateral attack by Ainscow during his lifetime in any proceeding in which he was seeking affirmative relief and in which the State had no interest, the next of kin cannot successfully contend that the decree of divorce is now subject to such an attack by them. Because of privity they cannot do now what Ainscow could not have done in his lifetime. The court in the case of *In re Davis' Estate,* 38 *Cal. App.* 2d 579, 101 *P.* 2d 761, 102 *P.* 2d 545, arrived at the same conclusion in a case closely analogous to the instant case. There the controversy was between a surviving son of a deceased second spouse and his reputed widow for the purpose of determining a right of inheritance. It was not disputed that the decedent urged the respondent (the reputed widow) to go to Nevada, establish a residence for the sole purpose of securing a divorce, and then to marry him. He promised he would pay her expenses and the costs of the divorce. He went to Reno, took an active part in the preparation of the case, and married her on the day the divorce was granted. He then returned with her to California, made a home for her, and held himself out as her lawful husband until the time of his death. The court cited and applied the general rule as stated in 19 *Am. Jur. p.* 811, that an heir, being in privity with the ancestor, is bound by an estoppel which was binding upon the ancestor, and held that where a judgment or decree, not void on its face, is attacked, based solely on the fraud of the ancestor in procuring it, the heir of such party shall not be permitted to profit by such fraud in an attack upon the decree, based entirely on the ground that the decree was produced by such fraud.

Under the law of this State (3847, *Code of* 1935) if an intestate be a married man at the time of his death, and

shall leave no children, nor the descendants of such living, his widow is entitled to the residue of his personal estate, after the payment of all legal demands, absolutely.

Applying the law to the facts as established by the evidence in this proceeding, Maynard S. Alexander, as administrator of the estate of Jennie M. Ainscow, deceased, is entitled to receive from the administrator of the estate of Allen H. Ainscow, deceased, the residue of the said sum of $30,044.66, after the payment therefrom of the costs of this proceeding which will be taxed against the estate of Allen H. Ainscow, deceased.

A decree will be signed in accordance with this opinion.