## BOWERS v. BOWERS.
## No. 156/609.

Court of Chancery of New Jersey.
July 21, 1947.

See also 139 N.J.Eq. 40, 49 A.2d 887.

McCarter, English & Studer, of Newark, for petitioner.

Joseph J. Corn, of Newark, for defendant.

TOMASULO, A. M.

The parties to this suit were married on December 26, 1936 at Dutch Neck, New Jersey and thereafter lived together as man and wife at Princeton, New Jersey. One child was born of the marriage; Bonnie Lee, who, at the time of the filing of the petition, was five years of age.

On May 17, 1946, the defendant instituted a divorce action against the petitioner in the state of Nevada and on June 21, 1946, obtained a final decree of divorce. Petitioner contends the Nevada decree is invalid, in that the defendant falsely and fraudulently alleged that she was an actual bona fide resident of the State of Nevada and that consequently, the courts of the State of Nevada had no jurisdiction. The petitioner did not appear in the Nevada Court or otherwise submit to its jurisdiction.

On June 21, 1946, the day of the entry of the Nevada final decree, the defendant and one L. Russell Cook went through a pretended ceremony of marriage in Reno, Nevada.

The petition charges that between June 6, 1946, and June 19, 1946, the defendant committed adultery with

the said L. Russell Cook in Los Angeles, California and that since June 21, 1946, the defendant has committed adultery with the same Mr. Cook at Princeton, New Jersey.

The answer filed, by this defendant sets up several defenses, none of which (for the purpose of the appeal) need be considered excepting the second defense which alleges as a bar to the right of the petitioner to a decree in this court, the existence of a decree of divorce procured by her in the State of Nevada on June 21, 1946. This portion of defendant's answer is the only one of the defenses embraced in the amended notices of appeal which sets up That The Court erred in determining:

(a) That the final decree of divorce entered on June 21, 1946, in the Second Judicial District Court of the State of Nevada in favor of the defendant herein against the petitioner herein is null and void and of no effect for lack of jurisdiction, and is not entitled to full faith and credit in the courts of New Jersey;

(b) That defendant has been guilty of adultery charged against her and the said petition as having been committed since June 21, 1946;

(c) That the petitioner Raymond Andrews Bowers and the defendant VernaLee Mather Bowers be divorced from the bond of matrimony for the cause aforesaid; and

(d) That the custody of Bonnie Lee Bowers, the child of the marriage of petitioner and defendant, be awarded to the petitioner.

It is evident that a determination of the first ground of appeal, (a) will be dispositive of the second and third grounds of appeal, (b) and (c), and therefore, they will be dealt with together.

The testimony discloses that as early as September 1945, the petitioner and the defendant were in difficulties culminating in a determination by her that "she had made up her mind to leave me" as the petitioner testified. The petitioner further testified that persistent inquiry by him of his wife finally elicited from her the admission

that defendant was interested in another man, although the petitioner did not at that time suspect it was Mr. Cook, with whom petitioner was associated in a social and business way; that at petitioner's suggestion, a three month trial period was agreed upon which the petitioner had hoped would save his marriage. At the conclusion of the trial period, which brings us to January, 1946, petitioner received assurances from the defendant that "every-thing was satisfactory" but this "satisfaction" was short-lived, since it appears that on January 15, 1946, the defendant told the petitioner, "I am going to leave you. I have made up my mind." This she did on the 30th of January 1946. The defendant packed her personal belongings, including her clothes, certain articles of furniture and utensils in the house, and moved them to the third floor of her father's home in Princeton, N. J., in which she said she planned to live "when she would return from Reno." It appears that she had previously made plane reservations for her trip to Reno and that because of inclement weather, resulting in the cancellation of the flight, she made the trip to Reno by train. The defendant wrote several letters from which the following excerpts bear upon her frame of mind as it relates to the issues before the court:

(Letter dated February 23, 1946). (a) From exhibit P-2 written to the petitioner, "We received two quilts for wedding presents. One from your grandma and one from Aunt Clara, I think I thought the one I took came from my side of the family. If I am mixed up on them, please use what is there *and upon my return* they'll be straightened out."

(b) From exhibit P-3, a letter addressed to Mr. and Mrs. L. A. Wright, Princeton, N. J. under date March 23, 1946, "I know how shocked and surprised you must have been to hear about Ray and me and I hasten to assure you that it was not done on the spur of the moment * * * there is no need to take sides for I am well aware that my husband is a particularly fine person and for whom I have had and always hope to have the utmost respect and admiration. I am so genuinely fond

of you both, *I hope to see you upon my return to Princeton in the future."*

(c) From exhibit P-4, a letter addressed to Mrs. Helen Plott, Trenton, N. J. under date of April 26, 1946, "I would like to see you *when I return."*

The defendant instituted her suit for divorce in the Nevada courts on May 17, 1946. A copy of the summons and petition was served personally upon the petitioner at Princeton, N. J., on May 21, 1946. The petitioner did not take part in these proceedings nor did he submit to the jurisdiction of the Nevada courts, and on June 21, 1946 a final decree of divorce was entered in her favor. An examination of the transcript of the Nevada proceedings discloses an alleged cause of action upon the alleged ground of extreme cruelty on the part of the husband which admittedly took place in New Jersey and which would fall far short of the requirements under our adjudicated cases for the purpose of sustaining an action for divorce for extreme cruelty.

As has been shown, defendant married Cook on June 21, 1946, and returned to Princeton, N. J., with him the early part of July 1946, the petitioner having seen her in Princeton on July 5, 1946. It is admitted that since June 21, 1946, the defendant and Cook have been living together as husband and wife and that in September 1946 they were residing in Pennington, N. J., in a home which was purchased by them.

The testimony of Ann Dishman, a sister of the petitioner, shows that in January 1946, the defendant told her at a luncheon that she planned to leave petitioner and that she was going to Reno for the purpose of getting a divorce and that there was another man whose name she did not mention; that she received a letter from the defendant (exhibit P-7) written while the defendant was in Reno, under date of March 22, 1946 in which the defendant stated, "I had hoped that this would be over by now and that I could leave Reno before or very shortly after a friend of mine arrives and he is due the first or second week in April. I have no im-

mediate plans for the future except that I shall leave Nevada in April for parts unknown. Before I leave Reno I shall telephone to say goodbye."

The co-respondent, L. Russell Cook, testified as follows: That in April 1946 he was a resident of New Jersey; that having had marital difficulties with his wife for about nine years, that on April 21, 1946 he instituted a suit for divorce against his wife in Reno, Nevada; that she filed a counterclaim and obtained a divorce upon the counterclaim against him on May 23, 1946; that he arrived in Reno on April 6th or April 7, 1946, and that he and the defendant in this suit saw one another frequently during their stay in Reno; that he had hoped, upon being divorced by his wife, to marry the defendant; that in June 1946, the defendant and he were together in California. It is evident from depositions taken de bene esse in California, of one R. E. Engersoll, a cashier and room clerk of the Arcady Apartment Hotel, Los Angeles, California, that the defendant and Cook occupied the same room as Mr. and Mrs. L. Russell Cook between June 6, 1946 and June 19, 1946. His testimony is indisputable both as to this fact and as to the identification of the parties, the identification of the defendant being made by means of a large photograph comprising an exhibit attached to the depositions.

The defendant, in her version of the testimony, stated, in response to a question as to what her plans were when she left New Jersey on January 30, 1946, that "I was interested only in leaving Princeton, N. J. I have no permanent arrangements to ever return." This appears to be the only direct and unevasive answer given by the defendant. Her other testimony is punctuated with hesitant responses and failure to answer. Another interesting statement made by the defendant is that she knew Cook's difficulties with his wife before she, the defendant, left New Jersey for Reno.

In this state of facts, it has not been difficult for me to determine where the truth lies. I am convinced and I have determined as a fact, that the defendant had a

well laid preconceived plan to leave the petitioner and to journey to Reno, Nevada, with the avowed intention of procuring the decree of divorce ultimately obtained by her on June 21, 1946 and to marry the co-respondent, L. Russell Cook. I do not believe the defendant in her belated protestations that when she went to Reno that she intended to become a permanent resident of Reno. Everything which she did and said at the time and since the entry of the Reno decree belies this: Her storing of her personal effects, household belongings and furniture at her father's home before leaving for Reno, and the letters which she wrote in which she indicated a plan to return to New Jersey, satisfy me conclusively that she never intended to remain in Reno any longer than was necessary. In fact, this is exactly what took place.

I am therefore led to the inescapable conclusion that the defendant never effected a change of domicile and consequently, she, in my judgment, remained a resident of the State of New Jersey during the pendency of the divorce proceedings in Reno, with the result that the Nevada courts lacked the requisite jurisdiction to enter a decree in the proceedings instituted there by the defendant.

I have determined therefore, that the Nevada courts, adjudication of domicile was based upon the defendant's misrepresentation or suppression of essential facts and is therefore, not binding upon the courts of this state. Sprague v. Sprague, 131 N.J.Eq. 104, 23 A.2d 810.

Aside from this, and even were I to believe the defendant in her statement that she never intended to return to New Jersey, I must, nevertheless, find that the defendant never intended to remain in Reno, Nevada and that consequently, as in the Sprague case, Supra, the animus manendi was lacking, with the result that the defendant failed to effect a change of her domicile from New Jersey to Nevada, bringing us to the same result as heretofore —viz.: That the courts of Nevada lacked jurisdiction to enter a decree of divorce in the proceedings brought by

the defendant for that purpose. Sprague v. Sprague, supra.

It follows also, that the defendant's decree does not come within the protection of the Federal Constitution, Article IV, Section 1, (the full faith and credit clause), because of the lack of domicile of either of the parties in Nevada and because the matrimonial domicile of the parties being in New Jersey, process in the suit was not served personally upon the petitioner in Nevada nor did he enter any appearance, Sprague v. Sprague, supra; Haddock v. Haddock, 201 U.S. 562, 26 S.Ct. 525, 50 L. Ed. 867, 5 Ann.Cas. 1, hence, the validity of the Nevada decree in New Jersey must be determined by our own public policy. Sprague v. Sprague, supra, and since neither petitioner nor defendant in the Nevada suit was domiciled in Nevada, defendant's Nevada decree is not within the protection of our own full faith and credit clause. Sprague v. Sprague, supra; Lister v. Lister, 86 N.J.Eq. 30, 37, 97 A. 170; Hollingshead v. Hollingshead, 91 N.J.Eq. 261, 110 A. 19. In addition to the foregoing, the proviso of R.S. 2:50–35, N.J.S.A. constitutes a positive prohibition to our own recognition of the defendant's Nevada decree as of any force or effect in New Jersey since the defendant left New Jersey and went to Nevada for the purpose of obtaining her decree of divorce there, for a cause which occurred while the parties resided in this state. Sprague v. Sprague, supra; Sechler v. Sechler, 94 N.J.Eq. at page 47, 118 A. 629; Di Brigida v. Di Brigida, 116 N.J.Eq. 208 at page 216, 172 A. 505.

For the reasons above stated, the defendant's Nevada decree of divorce is void and of no force or effect in New Jersey; therefore, the Reno decree is void in New Jersey and should be set aside. Petitioner is entitled to a decree for divorce as prayed for in his petition.

This brings me to the remaining ground of appeal—that respecting the custody of the child of the marriage. At the time of the entry of the decree, and for a long time prior thereto, and since January 30, 1946, the child

was in the custody of the petitioner. It was not until after the defendant's return from Reno, armed with her invalid Reno decree, that she instituted a custody suit in this court on August 6, 1946 (docket 156/575). This suit resulted in the entry of a final decree consented to by both petitioner and defendant under date of June 4, 1947. This final decree represented what appeared to be the best judgment of both parents and of their respective counsel as to what was best for the welfare of the child as to both custody and visitation. This decree continued in effect until the conclusion of the instant divorce proceedings, resulting in the entry of the decree nisi on January 27, 1948. Prior to the entry of the decree nisi, counsel appeared before me on several occasions for the purpose of settling the decree. The last motion was heard by me on November 24, 1947. A transcript of the record on this motion is on file with the Clerk of this Court and should be included as part of the state of the case.

An examination of the custody provisions embraced in the decree nisi will disclose that the provisions respecting the custody of the child are almost identical to the provisions embraced in the final decree entered in the custody proceedings (docket 156/575). The changes which were advised were in accordance with the wishes expressed by the defendant through her solicitor; (viz.) that there be a greater degree of clarification and certainty respecting the name of days, dates, and holidays, for the purpose of avoiding the possibility of disputes and controversies. In this the court concurred.

Nothing has been brought to the attention of the court in the instant proceedings that would justify or move this court in taking the child away from the father and awarding her to the mother, or in any other manner altering the decree in its present form. The decree in the custody case, (docket 156/675) continued the custody of the child in the father as theretofore and conferred upon the mother the rights and privileges which she herself requested and approved.

This court concurred with both parents, that the best interests of the child were served by the entry of the decree in the previous custody suit and in the absence of proof to the contrary, the court was justified in adopting this decree substantially in toto and incorporating it in the decree nisi in the instant proceeding.